# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

TAJUANNA DANIEL o/b/o J.K.D.,   )
    Plaintiff,   )
vs.   )   CV 12-CV-2188-S
MICHAEL J. ASTRUE,   )
Commissioner of the Social Security
Administration,   )
    Defendant.   )

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This court has jurisdiction pursuant to 42 U.S.C. § 405. Plaintiff is seeking reversal or remand of a final decision of the Commissioner. All administrative remedies have been exhausted.

### Procedural Background

J.K.D. (Plaintiff), a minor protectively filed an application for Supplemental Security Income (SSI) benefits through his mother on December 10, 2009, alleging disability from October 21, 2008 (R. 19, 112) based on seizures (R. 124) and problems speaking. A hearing was requested on June 7, 2010 (R. 78) and a hearing before an Administrative Law Judge (ALJ) was held on June 14, 2011 (R. 44). A decision was issued by the ALJ on July 6, 2011 (R. 19-33). Finding that the medical

evidence established severe impairments of expressive/receptive language delay, microcephaly[1] and seizure disorder (R. 22) which do not meet or functionally equal a Listing (R. 23, 24) but result in a marked limitation in acquiring and using information (R. 27), and less than marked limitations in interacting and relating with others (R. 29) and in health and physical well being (R. 32), the ALJ denied plaintiff benefits under Title XVI of the Social Security Act from December 10, 2009, the date of the SSI application (R. 32). The decision was appealed by and through counsel on August 17, 2011 by filing a Request for Review of the ALJ decision (R. 14) and subsequently submitting argument on December 21, 2011 (R. 157). The Appeals Council issued a form denial of the request for review on April 16, 2012 (R. 1). This action made the ALJ's decision the final decision of the Commissioner of the Social Security Administration (SSA), and plaintiff exhausted his administrative remedies.

**Factual Background**

Plaintiff was born on March 5, 2008 (R. 112). Plaintiff alleged disability due to seizures (R. 124). Plaintiff has severe impairments as determined by the ALJ of expressive/receptive language delay, microcephaly and seizure disorder (R. 22).

---

[1] Microcephaly is abnormal smallness of the head; applied to a skull with a capacity below 1350 ml. Stedmans Medical Dictionary microcephaly (27th ed. 2000).

Plaintiff was first seen at Children's Health System in Birmingham, Alabama for febrile[2] seizures on February 9, 2009 (R. 163-165). On October 27, 2010, plaintiff was seen by Dr. Stephanie Keller at Children's Health System for evaluation of microcephaly and "tremor-like" spells (R. 168). Dr. Keller referred plaintiff for an Electroencephalography (EEG) (R. 169). On November 3, 2009, an EEG was performed (R. 167). The EEG findings were consistent with primary generalized epilepsy of partial onset with rapid secondary generalization (R. 167)). Plaintiff was seen again on February 3, 2010 complaining of seizures (R. 224).

Plaintiff was evaluated by Sonya D. Whitaker, Speech-Language Pathologist on February 2, 2010, when plaintiff was approximately 23 months old (R. 213-215). Ms. Whitaker administered a Preschool Language Scale- 4th Edition[3] (PLS-4) to assess plaintiff's receptive and expressive language skills (R. 214). Plaintiff received a score on the PLS-4 that placed his expressive communication in the 1st percentile and his total language score in the 2nd percentile (*Id.*). Plaintiff's scores gave him an age equivalency of 1 year for total language and 0.11 year for expressive communication (*Id.*). Ms. Whitaker was unable to evaluate plaintiff's articulation,

---

[2] Febrile seizures are those denoting or relating to fever. Stedmans Medical Dictionary febrile (27th ed. 2000).

[3]This is a measure of young children's receptive and expressive language. http://www.pearsonassessments.com/HAIWEB/Cultures/en-us/Productdetail.htm?Pid=015-8659-406 (January 29, 2013).

fluency, voice/resonance, and oral motor skills due to lack of language skills (R. 214-215). Ms. Whitaker found that plaintiff presented with a receptive and expressive language impairment and recommended speech-language therapy (R. 215).

Plaintiff's initial evaluation by the Alabama Early Intervention System was completed on March 15, 2010 (R. 350-353). Plaintiff was identified as having cognitive, speech, adaptive and social developmental delays of 25% or greater. The evaluation assessed plaintiff's communication skills "through observation, informal and formal testing, including the Preschool Language Scale-4 (PLS-4)" administered by Amy Moore (R. 367). This assessment found that plaintiff is "diagnosed with a severe receptive-profound expressive language delay" (R. 369). The results of the PLS-4 showed that plaintiff's overall receptive/expressive language equivalency was 6 months (R. 351, 368). Plaintiff received speech therapy as part of the early intervention program (R. 295-299, 305-321).

After participating in an early intervention program for approximately 12 months, plaintiff was found eligible by Bessemer City Schools for special education services (R. 322-349). Plaintiff was administered the Battelle Developmental Inventory[4] 2nd (BDI-2) as part of this assessment (R. 341, 349). The BDI-2 indicated

---

[4]Screening for developmental delay in children from 1 to 8 years of age. 2 Attorneys Medical Deskbook § 18:12.

a severe delay in the areas of cognitive, communication and social emotional (R. 341). Plaintiff's total BDI-2 score placed him in the 0.2 percentile (R. 349). Due to cognitive and communication delay, the plaintiff was provided services through an IEP from April 7, 2011, to May 28, 2011 (R. 341). Plaintiff has continued to experience difficulty with expressive language skills and therefore found eligible to continue in special education services (R. 388-392).

## Standard of Review

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable to perform his previous work. *See Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). If the claimant is successful, the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy. *See id.*

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.

1990). "Substantial evidence" is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Bloodsworth*, 703 F.2d at 1239.

This court also must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *See Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987); *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). No presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. *See Brown v. Sullivan*, 921 F.2d 1233, 1235-36 (11th Cir. 1991); *Corneliuis v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). Furthermore, the Commissioner's "failure to . . . provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145–46. When making a disability determination, the Commissioner must, absent good cause to the contrary, accord substantial or considerable weight to the treating physician's opinion. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir.1988); *Walker*, 826 F.2d at 1000.

**Legal Analysis**

The ALJ found that plaintiff has the following severe impairments: expressive/receptive language delay, microcephaly, and seizure disorder. *See* 20 C.F.R. § 416.924(c). The ALJ then found that the claimant does not have an impairment or combination of impairments that functionally equals the criteria of any impairment included in the Listing of Impairments. *See* 20 C.F.R. §§ 416.924(d).

In determining whether an impairment or combination of impairments functionally equals the listings, the Administrative Law Judge must assess the plaintiff's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(g)-(e). In making this assessment, the Administrative Law Judge must compare how appropriately, effectively and independently the plaintiff performs activities compared to the performance of other children of the same age who do not have impairments. To functionally equal the listings, the plaintiff's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a)&(d).

In assessing whether the plaintiff has "marked" or "extreme" limitations, the Administrative Law Judge must consider the functional limitations from all medically determinable impairments, including any impairments that are not severe. 20 C.F.R. § 416.926a(a). The Administrative Law Judge must consider the interactive and cumulative effects of the plaintiff's impairment or multiple impairments in any affected domain. 20 C.F.R. § 416.926a(c).

The ALJ found that plaintiff has a marked limitation in acquiring and using information and a less than marked limitation in interacting and relating to others and in health and physical well-being (R. 27, 29). In making these findings the ALJ afforded significant weight to the childhood disability evaluation prepared by the State agency medical consultant, Robert Heilpern, M.D (R. 26, 261-267). Dr. Heilpern's report is dated March 24, 2010, and finds that plaintiff's impairment or combination of impairments is severe, but does not meet, medically equal, or functionally equal the listings. Dr. Heilpern found that plaintiff has a marked limitation in acquiring and using information and a less than marked limitation in interacting and relating to others and in health and physical well-being (R. 263-264). Dr. Heilpern's explanation for the marked limitation in acquiring and using information states "third party notes difficulties in this area. Child is 23 months old. Language impairment" (R. 263). A review of the record shows that the only third

8

parties to have evaluated plaintiffs language impairment at the time of Dr. Heilpern's report were Sonya D. Whitaker, Speech-Language Pathologist (R. 213-215) and Amy Moore. (R. 366-368).

The ALJ afforded good weight to the opinion of Sonya D. Whitaker, Speech-Language Pathologist (R. 26, 213-215). Ms. Whitaker's report was prepared February 2, 2010, when plaintiff was approximately 23 months old (R. 213). Ms. Whitaker administered a Preschool Language Scale- 4th Edition (PLS-4) to access plaintiff's receptive and expressive language skills (R. 214). Plaintiff received a score on the PLS-4 that placed his expressive communication in the 1st percentile and his total language score in the 2nd percentile (*Id.*). Plaintiff's scores gave him an age equivalency of 1 year for total language and 0.11 year for expressive communication (*Id.*). Ms. Whitaker's notes state that plaintiff "was unable to babble two syllables together, use one word, produce a variety of consonant sounds, imitate words, use five words, use vocalizations and gestures to request, produce different C-V combinations, babble short syllable strings with adult inflection, or name objects in pictures" (*Id.*).

The ALJ's opinion does not mention or assign weight to the testing by Amy Moore for the report prepared for the Alabama Early Intervention Program (R. 350).

Ms. Moore's assessment found that plaintiff suffered from "a severe receptive-profound expressive language delay" (R. 369). The results of the PLS-4, performed by Ms. Moore, showed that plaintiff's overall receptive/expressive language equivalency was 6 months (R. 368). Plaintiff's expressive language age equivalency was found to be 5 months (*Id.*).

The ALJ does not mention or assign weight to a Battelle Developmental Inventory prepared as part of the Bessemer City Schools evaluation for special education services (R. 341, 349). The BDI-2 was prepared January 28, 2010 (R. 349). The BDI-2 total score placed plaintiff in the 0.2 percentile (*Id*). The IEP documents that the results of plaintiff's BDI-2 indicate a "severe delay in the areas of cognitive, communication and social emotional" (R. 341).

Social Security regulation 20 C.F.R. § 416.926a(e)(2) explains that a child has a "marked limitation" in a domain when his impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. A child's day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. The regulations also explain that a "marked" limitation also means:

> (ii) If you have not attained age 3, we will generally find that you have a "marked" limitation if you are functioning at a level that is more than

> one-half but not more than two-thirds of your chronological age when there are no standard scores from standardized tests in your case record.
>
> (iii) If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(2).

Social Security regulation 20 C.F.R. § 416.926a(e)(3) explains that a child has an "extreme" limitation in a domain when his impairment(s) interferes "very seriously" with his ability to independently initiate, sustain, or complete activities. A child's day-to-day functioning may be very seriously limited when his impairment(s) limits only one activity or when the interactive and cumulative effects of his impairments(s) limit several activities. The regulations also explain that an "extreme" limitation also means:

> (ii) If you have not attained age 3, we will generally find that you have an "extreme" limitation if you are functioning at a level that is one-half of your chronological age or less when there are no standard scores from standardized tests in your case record.
>
> (iii) If you are a child of any age (birth to the attainment of age 18), we will find that you have an "extreme" limitation when you have a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or

> functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(3)

One of the PLS-4 tests administered to plaintiff shows that plaintiff's language functioning was at 6 months for total language when he was 23 months old. Under 20 C.F.R. § 416.926a(e)(3) this is a severe limitation because plaintiff was functioning at less than one-half his chronological age. Further, the BDI-2 evaluation of plaintiff placed plaintiff in the 0.2 percentile, an extremely low score (R. 349). Although the pertinent regulations place an emphasis on standardized tests and age equivalency, the ALJ failed to take either of these standardized tests into consideration. *Fontanez v. Barnhart*, 195 F. Supp. 2d 1333, 1348 (M.D. Fla. 2002) (citing *Borgens v. Halter*, 164 F. Supp. 2d 1309, 1312 (M.D. Fla. 2001) ("An ALJ who fails to determine the significance of a child's obviously low scores on standardized testing, acts contrary to the . . . regulations and to his basic duty to fully develop the record.").

Because the ALJ failed to evaluate the standardized tests provided as part of plaintiff's record, the ALJ did not provide sufficient reasoning for determining that the proper legal analysis has been conducted. The ALJ's opinion is therefore against the weight of the evidence and the ALJ failed to apply the proper legal standards.

Accordingly, the decision of the Commissioner is hereby **REVERSED** and **REMANDED** to the Commissioner for further evaluation of the record in accordance with this opinion.

      **DONE** and **ORDERED** this 31st day of January 2013.

                                       INGE PRYTZ JOHNSON
                                       SENIOR U.S. DISTRICT JUDGE